**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

**STEVEN PARR, JEFFERY ADAMS, TODD FRANK, RILEY HOLDER, MATTHEW HOLT, BRENT KIBODEAUX, BRYANT KIBODEAUX, NICHOLAS KLOET, RUSSELL KUZNIA, RICHARD LEFF, BRANDON MARLOW, JAMES MORTHOLE, JACOB NEGRAY, ROBERT SHOEMAKER, OLIVER SILVA, DAN VOLK, GEORGE WALLACE, JOSHUA WOOD, BRENT YANCEY, HENRY ALEXANDER, KENNY SANDERS, JACOB JONES, MAYLLEL MEDINA, ALEXANDER AUFISCHER, FRANK CARROLL, JOSH FEHRIBACH, ROBBY JEWELL, JEFF JEWELL, QAMAR SHAFEEK, CURTIS STEWART, BRAD WRIGHT, CHARLIE CARROLL, KEVIN CLEARY, ROBBY DULL, ALLEN GIBBS, CLINT GOODWIN, CLYDE HUNT, RICK KLOTZ, JOHN MIRA, MALCOLM PARSONS, BRIAN WILEY, TROY WILHOITE, KEITH BACON, DANIEL BOYETT, RANDOLF BROWN, DEMARIO CHARLES, GAVIN COMMON, WADE DISON, BRANDON GARRETT, FREDRICO HENRY, SHAWUN KNIGHTON, DANNY MCGRAW, GINGER MILLER, SHANNON TINGSTROM, STEVEN TRAHAN, JAMES DILLON, DANIEL DOUCETTE, ROCKY GORBEY, GILBERTO LOPEZ, PAUL MATTINGLY, JAMES SOUTHWORTH, JOSHUA ALLEN, BRIAN BEELER, MATTHEW BUCHHOLZ, TIMOTHY BURNS, CHRISTOPHER GRANT, LONNIE**

Case No. _____

**HARRIS, SCOTT HICKOK
DANIEL JURAS, BRENT LAWSON,
SHANNON MCCAVIT, SCOTT
MCKELLAR, DENNIS ROGALE,
TRAVIS TRACEY, JOHN TURNER,
RICHARD BROCKMIRE, JAMES
BATES, KENDRICK FREEMAN,
KEVIN GATEWOOD, RANDY
MIDDLETON, KENNETH ROSS,
BRIEN POSTER, GERAMEL
CEDENO, JAMES HARRIS,
CLIFFORD MINOR, ANTHONY
REEDER, BRANDON ADAMS,
ARNOLD BRAGG, CODY FIDDLER,
JOSHUA FLEISCHER, PAUL
FRIBOURG, TIMOTHY FRY, PHIL
GAHRING, KURTIS HINDEL, JOHN
KELLY, DONALD LEMON, JAMES
MCCANN, ALEXANDER MICHEL,
JOHN MONNOT, RICK OHMIT,
DARRELL WARE, MARK WATTS,
PAUL YOUNG, RICHARD BROWN,
JUSTIN CANADA, DANIEL
CARPENTER, CARLOS GHOLSTON,
WILLIAM HOLLOWAY, CARL
OSBORNE, COURTNEY RHYAN,
KASIM RHYAN, SPANKY
ROBERTSON, JASON ROUSSEAU,
GREGORY SMITH, MICHAEL
VAUGHN, DOUGLAS ALLEN,
RUTHEN CHUN, BENJAMIN CLARK,
STEPHEN COLLINS, JOHN KING,
JOSE LIZAMA, JAMES MAIDENS,
JASON RICHARDSON, CARL
SCHNACKEL, GLEN STECK,
OLATUNBOSUN SUNMONU, TERRY
SCANLON and ALLAN AREL**

                              **Plaintiffs,**

      **v.**

**DIRECTV, LLC, MULTIBAND FIELD
SERVICES, INC., MULTIBAND**

CORP., and GOODMAN NETWORKS,
INC.,

                    Defendants.

## COMPLAINT

Plaintiffs, by and through their undersigned counsel, for their individual complaints against DIRECTV LLC ("DIRECTV") and Multiband Field Services, Inc., Multiband Corp., and Goodman Networks, Inc., (collectively, "Multiband/Goodman") (collectively with DIRECTV, "Defendants") hereby state as follows:

### NATURE OF SUIT

1.       Plaintiffs worked as satellite television installation and service technicians. Plaintiffs' principal job duty as technicians was to install and service DIRECTV satellite television systems.

2.       DIRECTV controls and manages a nationwide corps of installation technicians in two ways: (1) by directly employing the technicians; and (2) by outsourcing technician labor through a network of service providers (the "Provider Network") consisting of Home Service Providers ("HSPs") like Multiband/Goodman.

3.       Plaintiffs were all acknowledged employees of Multiband/Goodman or one of its predecessors. Each Plaintiff also alleges that, as a matter of economic reality, they were also employed by DIRECTV.

4.     Defendants paid Plaintiffs on a piece-rate basis that did not properly compensate them for all of the hours they worked.

5.     Plaintiffs seek to recover unpaid wages and other applicable remedies under the Fair Labor Standards Act ("FLSA").

## PROCEDURAL HISTORY

6.     On March 2, 2010, Plaintiffs Jamie Arnold and Clinton Feger, on behalf of themselves and others similarly situated, filed a complaint against DIRECTV in the Eastern District of Missouri under case number 4:10-cv-00352. They alleged that DIRECTV and the HSP that employed them failed to pay them all wages due in violation of the FLSA and sought to hold DIRECTV liable as a joint employer.

7.     On September 28, 2012, the *Arnold* court conditionally certified an FLSA collective action. (Doc. No. 121). After mailing of court-authorized notice, many technicians working in DIRECTV's Provider Network filed consents to become party plaintiffs in the *Arnold* case.

8.     After several years of litigation, on March 31, 2017, the *Arnold* court denied DIRECTV's motions for summary judgment, including on the questions of joint employment and whether the piece rate pay system complied with the FLSA (Doc. Nos. 472 and 473).

9.     On March 31, 2017, the *Arnold* court also granted DIRECTV's motion for decertification of the FLSA collective action, finding that individual issues among the plaintiffs precluded continuing to trial as a representative action (Doc. No. 474). The

court tolled the plaintiffs' statutes of limitations for 120 days to permit Plaintiffs to refile their individual claims.

## JURISDICTION, VENUE, AND JOINDER

10.     The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). Thus, this Court has subject-matter jurisdiction over Plaintiffs' individual FLSA claims under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11.     Multiband Field Services, Inc. is a Delaware corporation with its current principal place of business in Texas.  For most of the relevant time period, Multiband Field Services, Inc.'s principal place of business was in Minnesota. Multiband Field Services, Inc. is currently a wholly owned subsidiary of Goodman Networks, Inc.

12.     For most of the relevant time period, Multiband Corp. was a Minnesota corporation with its principal place of business in Minnesota. On December 17, 2015, Multiband Corp. merged with and into Goodman Networks, Inc. Multiband Corp. did not survive the merger.

13.     Goodman Networks, Inc. is a Texas corporation with its current principal place of business in Dallas, Texas.

14.     DIRECTV is registered to conduct business in Minnesota, operates warehouses, offices, and separate retail locations in Minnesota, and promotes, markets, and sells its satellite television service in this district. DIRECTV further employs field operations managers who supervise Multiband/Goodman, Multiband/Goodman's

5

technicians, and other HSP technicians who install and service DIRECTV equipment in Minnesota.

15.     DIRECTV and Multiband/Goodman act together in Minnesota to establish, execute, and monitor the employment and pay policies giving rise to Defendants' liability herein. For most of the relevant time period, Plaintiffs' piece-rate pay was calculated and distributed to Plaintiffs from Multiband/Goodman's offices in this district. Due to DIRECTV and Multiband/Goodman's joint employment of Plaintiffs, DIRECTV's liability is derivative of Multiband/Goodman's conduct in Minnesota. Thus, this Court has personal jurisdiction over DIRECTV.

16.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1). Venue is proper in this district for DIRECTV under 28 U.S.C. § 1391(c)(2) and (d) because DIRECTV is subject to this Court's personal jurisdiction with respect to the civil action in question. Venue is proper with respect to Multiband/Goodman under 28 U.S.C. § 1391(c)(2) and (d) because Multiband/Goodman is headquartered in this judicial district. Venue in this district is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district, and Defendants are each subject to this Court's personal jurisdiction.

17.     Joinder of the plaintiffs is proper because each of the Plaintiffs asserts a right to relief that arises out of the same series of transactions or occurrences and common questions of law and fact will arise in this action. Fed. R. Civ. P. 20.

**DEFENDANTS**

18.     DIRECTV, LLC is a California limited liability company with its principal place of business in El Segundo, California. DIRECTV, LLC does business as DIRECTV Home Services. DIRECTV, LLC is a wholly-owned subsidiary of DIRECTV Group Holdings, LLC. That is, DIRECTV Group Holdings, LLC owns 100% of the membership interest in DIRECTV, LLC.

19.     During the majority of the time relevant herein, Defendant Multiband/Goodman operated with its principal place of business in this district in Minnetonka, Minnesota.

**COMMON FACTUAL ALLEGATIONS**
**DIRECTV's Provider Network**

20.     DIRECTV operates its Provider Network nationwide with Multiband/Goodman serving as one of its HSPs. DIRECTV was the primary client of Multiband/Goodman and was the source of substantially all of its income.

21.     During the relevant time period, and as alleged in more detail below, DIRECTV merged with or acquired several HSPs.

22.     DIRECTV structured and operates its Provider Network as a top-down integrated organization. DIRECTV sits atop the Provider Network where it controls its HSPs with highly restrictive contracts. DIRECTV's HSPs then engage two types of technicians—employees and subcontractors—to install and service DIRECTV systems. The employee technicians, like Plaintiffs here, are nominally employed directly by the

HSP (here Multiband/Goodman), but are economically dependent on DIRECTV and thus, under the FLSA, are also employees of DIRECTV.

### DIRECTV's HSPs Are Not Independent

23. Each HSP has the same contractual relationship with DIRECTV that unequivocally establishes DIRECTV as the dominant partner with the HSP relegated to the role of subordinate labor provider. Virtually all of the contractual duties and obligations flow one way: from the HSP to DIRECTV.

24. DIRECTV exerts significant control over and closely supervises its purportedly independent provider partners. For example, DIRECTV has a hierarchy of field operations managers, senior field managers, a senior director, and a vice president whose role is to directly manage the HSPs, including Multiband/Goodman.

25. The HSPs are economically dependent on DIRECTV, and DIRECTV regularly infuses the HSPs with what it labels internally as "extraordinary advance payments" in order to keep the HSPs' operations afloat while feigning an outward appearance of independence.   When litigation or other circumstances make the "independent" relationship no longer financially viable, DIRECTV simply acquires its subordinate HSPs entities. Specifically, DIRECTV has provided Multiband/Goodman with several advance payments which were typically more than one million dollars each.

26. DIRECTV acquires its provider partners in a seamless process that requires little more than swapping out the names on a few contracts and resetting a few managers' titles.  The process does not require any of the structural modification or reorganization that normally accompanies an arm's length acquisition.  To date, there are only three

"independent" HSPs still in operation—one of them being Multiband/Goodman. Since DIRECTV developed its Provider Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.

27.     When Multiband/Goodman filed for bankruptcy earlier this year, DIRECTV's parent AT&T "played an active and constructive role" in the negotiation of Multiband/Goodman's pre-packaged Chapter 11 restructuring plan.

28.     Also as part of the Multiband/Goodman bankruptcy, the Reorganized Goodman Board is required to have one of the five members of its board of directors chosen from a slate of three candidates proposed by AT&T.

29.     Further, as part of Multiband/Goodman's Chapter 11 bankruptcy AT&T satisfied an unknown portion of a tax liability that Multiband/Goodman owed to the State of Texas. The portion is unknown because the settlement agreement was sealed by the bankruptcy court at Multiband/Goodman's request.

### The Economic Reality: DIRECTV Employs Plaintiffs

30.     An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employee may be employed by more than one employer at the same time.  Employment status for purposes of wage and hour law is defined by the real economic relationship between the employer(s) and the employees.

31.     Through its Provider Network, DIRECTV establishes, defines, and controls the economic relationship between itself and its technicians. Among other indicia of

employment described herein, DIRECTV controls the details of Plaintiffs' day-to-day work and the piece rate compensation method by which Plaintiffs are paid for their work.

32.     Every technician installing DIRECTV's satellite television equipment must do so according to the same policies, procedures, practices, and performance standards that DIRECTV alone establishes. DIRECTV's policies and procedures go beyond safety and quality assurance and dictate everyday work requirements such as Plaintiffs' appearance, clothing, and behavior.

33.     DIRECTV imposes its policies and procedures on Plaintiffs through the contracts it enters into with its HSPs.  DIRECTV refers to the contracts it signs with HSPs as "Home Service Provider Agreements" ("HSP Agreements"). These HSP Agreements require HSPs to "pass down" DIRECTV's policies to their employee technicians like Plaintiffs.

34.     DIRECTV's HSP Agreements contain detailed requirements that enable it to control nearly every facet of Plaintiffs' work. DIRECTV promulgates detailed instructions from how Plaintiffs are to introduce themselves to customers, how they are to complete the installation, and what they are to wear.

35.     DIRECTV requires Plaintiffs to hold themselves out as agents of DIRECTV.  For example, DIRECTV requires Plaintiffs to wear DIRECTV branded shirts, drive DIRECTV branded vehicles, and show customers their DIRECTV branded ID cards. DIRECTV refers to Plaintiffs as "the face of DIRECTV."

36.     DIRECTV issued a unique "Tech ID number" to each Plaintiff. Using this Tech ID Number, DIRECTV tracks, amongst other things, when Plaintiffs arrive at a

particular job, when Plaintiffs activate a customer's satellite equipment, and when Plaintiffs leave a particular job site. DIRECTV also uses Plaintiffs' Tech ID numbers to track how customers rate Plaintiffs on DIRECTV's customer satisfaction surveys and how Plaintiffs perform on DIRECTV's performance metrics.

37. DIRECTV exercises its control of Plaintiffs both directly through the policies described herein and indirectly through its agent and proxy, Multiband/Goodman.

38. DIRECTV uses a database program known as SIEBEL to assign and deliver detailed "work orders" to Plaintiffs using their unique Tech ID number.

39. Through its SIEBEL system, DIRECTV works in tandem with Multiband/Goodman to control who is permitted to perform DIRECTV's work. DIRECTV can effectively terminate Plaintiffs' employment by ceasing to issue work to their Tech ID number.

40. Multiband/Goodman performs middle-management functions between DIRECTV and Plaintiffs. In this role, Multiband/Goodman works on DIRECTV's behalf to distribute DIRECTV's work orders to Plaintiffs and supervise Plaintiffs. DIRECTV utilizes Multiband/Goodman's payroll system to administer paychecks to Plaintiffs; Multiband/Goodman utilizes revenue from DIRECTV, as well as DIRECTV's SIEBEL and other work order systems, to generate Plaintiffs' pay.

41. DIRECTV sets forth hiring criteria for Multiband/Goodman's employees which Multiband/Goodman implements and enforces. DIRECTV also sets the requirements for how Multiband/Goodman's technicians perform their work.

Multiband/Goodman administers DIRECTV's required training regimen both when technicians are initially hired and throughout their employment.

42.     At all times relevant, DIRECTV retained the authority to terminate the employment of any technician employed by Multiband/Goodman.

43.     Both DIRECTV and Multiband/Goodman send personnel out to customers' residences to perform quality control surveys ("QCs") on Plaintiffs' work.  DIRECTV and Multiband/Goodman quality control personnel frequently perform their QCs while Plaintiffs are still performing the work at a customer's residence.  DIRECTV and Multiband/Goodman quality control personnel also conduct QCs after Plaintiffs have completed their work and have left a residence. Defendants' quality control personnel sometimes require Plaintiffs to return or "rollback" to a job to assist a customer or bring their work into compliance with DIRECTV specifications.

44.     Multiband/Goodman holds weekly meetings between its supervisors, managers, and technicians. DIRECTV managers frequently attend these meetings and sometimes directly address technicians, including Plaintiffs, regarding DIRECTV initiatives, technology, and performance metrics.

45.     DIRECTV regularly conducts audits of Multiband/Goodman's sites to ensure compliance with DIRECTV's contractual requirements. These audits include inspection of Multiband/Goodman's employees, vehicles, and the personnel files that Multiband/Goodman maintains for each of its W-2 technicians.

46.     DIRECTV requires all technicians to pass a drug test, a background check, and obtain a certification from the Satellite Broadcasting & Communications Association ("SBCA") before DIRECTV will assign work orders to that technician.

47.     DIRECTV required Multiband/Goodman to provide Plaintiffs with ongoing training which typically included reviewing DIRECTV's written materials, watching DIRECTV's videos, and taking DIRECTV's tests in order to demonstrate Plaintiffs' knowledge of DIRECTV's policies and procedures.

48.     Plaintiffs typically start their workdays when they receive the work orders that DIRECTV assigns to them for that day. During the relevant time period, Plaintiffs received DIRECTV's work orders through an electronic handheld device, email, or in hardcopy.  Plaintiffs typically receive DIRECTV's work orders while they are at home or at Multiband/Goodman's warehouse. Plaintiffs then review their work orders, look in their vehicles to determine if they have the equipment necessary to complete those work orders, and plan their driving routes.    Plaintiffs then drive to Multiband/Goodman's warehouse to pick up equipment or attend a meeting, or drive directly to their first customer's residence.

49.     DIRECTV's work orders set out specific timeframes when Plaintiffs are supposed to be at a customer's residence, and they often prescribe the specific order in which Plaintiffs are to complete their work orders. DIRECTV frequently assigns work orders to technicians one at a time and assigns those work orders based on the technician's proximity to "the next" work order, the technician's skills, and the technicians' schedule, all of which is maintained and tracked by DIRECTV.

50.     After completing a work order, Multiband/Goodman technicians, including Plaintiffs, frequently have to wait several minutes and sometimes more than an hour to receive their next assignment from DIRECTV.

51.     DIRECTV policy requires Plaintiffs to check in with DIRECTV when they arrive at a customer's residence. After Plaintiffs check in with DIRECTV either through their electronic handheld device or by calling DIRECTV directly, Plaintiffs attempt to make contact with the customer and complete the installation, service call, or upgrade. If a customer is not home, DIRECTV policy requires Plaintiffs to wait at the customer's home for 15–30 minutes and then hang a door tag on the customer's door.  If the customer is home and all other preconditions are met, Plaintiffs complete the installation, service call, or upgrade to DIRECTV's standards and following DIRECTV's policies regarding customer service. While at the customer's residence, Plaintiffs contact DIRECTV to activate the customer's satellite system by either calling DIRECTV directly or through their electronic handheld device. DIRECTV policy then requires Plaintiffs to educate the customer for at least 30 minutes and have the customer sign paperwork. Plaintiffs then remove debris and equipment from the customer's residence. Once Plaintiffs have completed an appointment, they contact DIRECTV through the phone or their handheld device to inform DIRECTV that they are in route to the next appointment.

52.     After Plaintiffs leave a customer's residence, DIRECTV has customers complete a customer satisfaction survey regarding Plaintiffs' performance. DIRECTV's customer satisfaction surveys ask customers to rate Plaintiffs by such criteria as whether Plaintiffs showed the customer their DIRECTV ID badge and whether Plaintiffs appeared

to be in a rush. The results of the DIRECTV's customer satisfaction surveys impact Plaintiffs' pay, training, and whether DIRECTV continues to issue work orders to Plaintiffs' Tech ID Numbers.

53.     Although DIRECTV controls nearly every aspect of Plaintiffs' work and is in frequent communication with Plaintiffs throughout every workday, DIRECTV disclaims any employment relationship with Plaintiffs. Employment status for purposes of wage and hour law, however, is defined by the real economic relationship between employers and employees. The economic reality is that Plaintiffs are employed by both DIRECTV and Multiband/Goodman.

54.     DIRECTV's Provider Network is purposefully designed to carefully control the technicians installing its satellite systems while unlawfully circumventing the requirements of the FLSA.

### Defendants Do Not Pay Plaintiffs for All Hours Worked

55.     DIRECTV, through Multiband/Goodman, pays Plaintiffs using a piece-rate pay system. Under this system, Defendants pay Plaintiffs for completing certain enumerated "productive" tasks that DIRECTV has listed on a standardized rate card. Plaintiffs are not paid, however, for other indispensable tasks that are necessary to install and service DIRECTV satellite television service.  Therefore, Defendants do not pay Plaintiffs for all of the work they do and hours they spend working for Defendants.

56.     Plaintiffs' piece-rate pay is calculated based on reports of completed work orders created and maintained by DIRECTV and provided to Multiband/Goodman.

57.    DIRECTV effectively controls Plaintiffs' pay through the common policies and practices it mandates in its HSP Agreements with Multiband/Goodman. DIRECTV internal documents demonstrate that DIRECTV understands that the amounts it pays to its HSPs, like Multiband/Goodman here, directly impacts how much money the technicians, like Plaintiffs, can make. Conversely, the amount of money Multiband/Goodman pays technicians like Plaintiffs is effectively capped by the amount DIRECTV pays Multiband/Goodman.

58.    Defendants pay Plaintiffs for completing specific line items that DIRECTV lists on its work orders. These line items include payment for installing a standard, high definition, KaKu, or other satellite dish and one receiver. Plaintiffs are also paid for certain additional equipment that they install in a customer's residence. Plaintiffs are paid a set amount for service calls and upgrades.

59.    Defendants do not pay Plaintiffs for "non-productive" tasks such as driving to and between job assignments, receiving and reviewing schedules, calling customers to confirm appointments, obtaining required supplies, assisting other technicians, waiting between jobs, waiting for customers, maintaining and organizing work vehicles, and other indispensable tasks that are necessary to install and service DIRECTV satellite television systems.

60.    Defendants do not pay Plaintiffs when a work order cannot be closed, regardless of the reason or how much time Plaintiffs spend on the particular job. DIRECTV will not allow a work order to "close," and thus does not pay Plaintiffs for their work on the work order, in a variety of circumstances, including if a customer has

16

not paid a bill, if there is no line-of-sight from the customer's residence to DIRECTV's satellites, if the customer is not home, or if Plaintiffs are not able to get permission from the customer's landlord to mount a satellite dish.

61.     The FLSA permits employers to pay employees on a piece-rate basis as long as the employer pays for all hours worked, including non-productive hours, and pays a premium for hours worked over forty in a week, based on the employee's regular rate. *See* 29 U.S.C. § 207; 29 C.F.R. §§ 778.111, 778.318.

62.     An employer and employee may agree that the piece-rate pay compensates the employee for both productive and nonproductive hours, but the FLSA is not satisfied where the employer and employee do not make such an agreement. *See* 29 C.F.R. 778.318(c) (where it is "understood by the parties that other compensation received by the employee is intended to cover pay for such hours" . . . . "[I]f that is the agreement of the parties, the regular rate of the piece worker will be the rate determined by dividing the total piece work earnings by the total hours worked (productive and nonproductive) in the workweek.").

63.     Plaintiffs and Defendants did not have an agreement or understanding that the pay Plaintiffs received for their productive tasks was also intended to compensate them for all the hours they spent working on nonproductive tasks. To the contrary, Plaintiffs understood that they would not be paid for performing a number of required tasks for Defendants.  But such an agreement is not legal under the FLSA. *See* 29 C.F.R. § 778.318(a).

**Plaintiffs' Overtime Premiums Are Miscalculated**

64.     Plaintiffs, in many workweeks, worked more than 40 hours per week for Defendants.

65.     In addition to failing to pay Plaintiffs for many of the hours they work, Defendants also miscalculate Plaintiffs' regular rate of pay. Plaintiffs' regular rate of pay is unlawfully diminished by dividing Plaintiffs' total pay by the sum of the number of hours Plaintiffs spent performing tasks that they were paid for *and* the number of hours they were not paid for. To comply with the FLSA, Defendants are required to calculate Plaintiffs' regular rate by dividing Plaintiffs' total pay by only the number of hours Plaintiff spent performing tasks that they were actually paid for.

**Defendants Willfully Fail to Keep Accurate Time Records and Encouraged Plaintiffs to Work Off-The-Clock**

66.     The FLSA requires employers to maintain accurate time and other employment records related to their employees. DIRECTV willfully fails to maintain these records for Plaintiffs in order to save on payroll and other costs.

67.     Defendants have instituted policies and procedures to encourage, and sometimes require, Plaintiffs to inaccurately record the number of hours that they work in a given week. For example, Plaintiffs were frequently required to write down on their time sheets that they took a break for lunch, regardless of whether Plaintiffs actually took an uninterrupted lunch break. Defendants also discouraged Plaintiffs from reporting all of their working hours (in particular, hours spent on nonproductive tasks) by telling

Plaintiffs they would not receive additional work orders if they reported significant amounts of overtime.

68.     Defendants are, or should be, aware that Plaintiffs' supervisors frequently require or encourage Plaintiffs to inaccurately record their hours. Defendants are in frequent communication with Plaintiffs during the typical work day.  Plaintiffs often call their supervisors several times per day to troubleshoot problems and coordinate work orders.   Many Plaintiffs go into Multiband/Goodman's warehouse each workday. Furthermore, DIRECTV policy requires Plaintiffs to contact DIRECTV directly, either through their electronic handheld device or via phone, at least three times for each work order they complete during the course of a day.

69.     DIRECTV keeps a work schedule for each Plaintiff that almost always exceeds 40 hours per week. Additionally, DIRECTV's SIEBEL system keeps detailed time records of when Plaintiffs put themselves on site at a job, when they activate a job, and when they close a job.   Both DIRECTV and Multiband/Goodman utilize DIRECTV's SIEBEL data to track when technicians get to their first assignment of the day and when they close their last work order of the day.

70.     Both DIRECTV and Multiband/Goodman use the data DIRECTV collects on each technician, including Plaintiffs, to evaluate each technician's performance according to DIRECTV's metrics.

71.     Both DIRECTV and Multiband/Goodman use DIRECTV's SIEBEL data to monitor how much work DIRECTV is assigning to each technician based on the "assigned durations" of technicians' work orders. The assigned durations are

DIRECTV's time estimates of how long a given work order should take based on the various time-and-motion studies that DIRECTV has commissioned over the years.

### Defendants' Policies and Practices Violate the FLSA

72.     Defendants' piece-rate pay system fails to comply with applicable law and constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

73.     As a result, Plaintiffs were not paid for all of the overtime hours they worked, and the overtime hours that they were paid for were calculated using an improperly low regular rate in violation of the overtime provisions of the FLSA.

### PLAINTIFFS' CLAIMS

**Plaintiff Steven Parr**

74.     Plaintiff Steven Parr currently resides in Casey, Illinois. Mr. Parr installed and serviced DIRECTV satellite systems in Illinois from approximately May 2009 to June 2011. Mr. Parr filed a consent to join the *Arnold* litigation on March 20, 2013.

75.     In many of the weeks Mr. Parr worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 54 hours per week. But Mr. Parr was not paid for all his working time. Mr. Parr estimates that in a typical week he spent approximately 14 to 24 hours on work tasks that were not paid.

76.     Mr. Parr brings his claims against defendant DIRECTV.

**Plaintiff Jeffery Adams**

77.     Plaintiff Jeffery Adams currently resides in West Frankfort, Illinois. Mr. Adams installed and serviced DIRECTV satellite systems in Illinois from approximately 2004 to present. Mr. Adams filed a consent to join the *Arnold* litigation on March 7, 2013.

78.     In many of the weeks Mr. Adams worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 65 hours per week. But Mr. Adams was not paid for all his working time. Mr. Adams estimates that in a typical week he spent approximately 10 to 25 hours on work tasks that were not paid.

79.     Mr. Adams brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Todd Frank**

80.     Plaintiff Todd Frank currently resides in Washington, Illinois. Mr. Frank installed and serviced DIRECTV satellite systems in Illinois from approximately November 2007 to August 2014. Mr. Frank filed a consent to join the *Arnold* litigation on February 5, 2013.

81.     In many of the weeks Mr. Frank worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Frank was not paid for all his working time. Mr. Frank estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

82.     Mr. Frank brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Riley Holder**

83.     Plaintiff Riley Holder currently resides in Creal Springs, Illinois. Mr. Holder installed and serviced DIRECTV satellite systems in Illinois, Missouri, and Kentucky from approximately August 2005 to January 2013. Mr. Holder filed a consent to join the *Arnold* litigation on February 25, 2013.

84.     In many of the weeks Mr. Holder worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 55 hours per week. But Mr. Holder was not paid for all his working time. Mr. Holder estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

85.     Mr. Holder brings his claims against defendant DIRECTV.


**Plaintiff Matthew Holt**

86.     Plaintiff Matthew Holt currently resides in Ava, Illinois. Mr. Holt installed and serviced DIRECTV satellite systems in Illinois from approximately June 2005 to August 2013. Mr. Holt filed a consent to join the *Arnold* litigation on March 19, 2013.

87.     In many of the weeks Mr. Holt worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 hours per week. But Mr. Holt was not paid for all his working time. Mr. Holt estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

88.     Mr. Holt brings his claims against defendant DIRECTV.

**Plaintiff Brent Kibodeaux**

89.    Plaintiff Brent Kibodeaux currently resides in Royalton, Illinois. Mr. Kibodeaux installed and serviced DIRECTV satellite systems in Illinois from approximately 2005 to present. Mr. Kibodeaux filed a consent to join the *Arnold* litigation on February 25, 2013.

90.    In many of the weeks Mr. Kibodeaux worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 55 to 57 hours per week. But Mr. Kibodeaux was not paid for all his working time. Mr. Kibodeaux estimates that in a typical week he spent approximately 10 to 12 hours on work tasks that were not paid.

91.    Mr. Kibodeaux brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Bryant Kibodeaux**

92.    Plaintiff Bryant Kibodeaux currently resides in Royalton, Illinois. Mr. Kibodeaux installed and serviced DIRECTV satellite systems in Illinois and Kentucky from approximately 2007 to present. Mr. Kibodeaux filed a consent to join the *Arnold* litigation on March 20, 2013.

93.    In many of the weeks Mr. Kibodeaux worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 70 hours per week. But Mr. Kibodeaux was not paid for all his working time. Mr. Kibodeaux estimates that in a typical week he spent approximately 15 to 30 hours on work tasks that were not paid.

94.    Mr. Kibodeaux brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Nicholas Kloet**

95.    Plaintiff Nicholas Kloet currently resides in Spring Valley, Illinois. Mr. Kloet installed and serviced DIRECTV satellite systems in Illinois from approximately February 22, 2005 to April 2010 and from November 11, 2010 to February 6, 2014. Mr. Kloet filed a consent to join the *Arnold* litigation on February 12, 2013.

96.    In many of the weeks Mr. Kloet worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 65 hours per week. But Mr. Kloet was not paid for all his working time. Mr. Kloet estimates that in a typical week he spent typically 15 to 25 hours per week on work tasks that were not paid.

97.    Mr. Kloet brings his claims against defendant DIRECTV.

**Plaintiff Russell Kuznia**

98.    Plaintiff Russell Kuznia currently resides in Lincoln, Illinois. Mr. Kuznia installed and serviced DIRECTV satellite systems in Illinois from approximately 2005 to September 2013. Mr. Kuznia filed a consent to join the *Arnold* litigation on March 19, 2013.

99.    In many of the weeks Mr. Kuznia worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 68 hours per week. But Mr. Kuznia was not paid for all his working time. Mr. Kuznia estimates that in a typical week he spent approximately 14 hours on work tasks that were not paid.

100.    Mr. Kuznia brings his claims against defendant DIRECTV.

**Plaintiff Richard Leff**

101.   Plaintiff Richard Leff currently resides in Peoria, Illinois. Mr. Leff installed and serviced DIRECTV satellite systems in Illinois from approximately June 2009 to June 2010. Mr. Leff filed a consent to join the *Arnold* litigation on January 31, 2013.

102.   In many of the weeks Mr. Leff worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Leff was not paid for all his working time. Mr. Leff estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

103.   Mr. Leff brings his claims against defendant DIRECTV.

**Plaintiff Brandon Marlow**

104.   Plaintiff Brandon Marlow currently resides in Herrin, Illinois. Mr. Marlow installed and serviced DIRECTV satellite systems in Illinois and Kentucky from approximately March 2012 to the present. Mr. Marlow filed a consent to join the *Arnold* litigation on July 26, 2017.

105.   In many of the weeks Mr. Marlow worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 55 hours per week. But Mr. Marlow was not paid for all his working time. Mr. Marlow estimates that in a typical week he spent as many as 15 to 20 hours on work tasks that were not paid.

106.   Mr. Marlow brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff James Morthole**

107.    Plaintiff James Morthole currently resides in Taylorville, Illinois. Mr. Morthole installed and serviced DIRECTV satellite systems in Illinois from approximately May 2009 to January 2015. Mr. Morthole filed a consent to join the *Arnold* litigation on March 1, 2013.

108.    In many of the weeks Mr. Morthole worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 66 hours per week. But Mr. Morthole was not paid for all his working time. Mr. Morthole estimates that in a typical week he spent as many as 18 hours on work tasks that were not paid.

109.    Mr. Morthole brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Jacob Negray**

110.    Plaintiff Jacob Negray currently resides in Pontiac, Illinois. Mr. Negray installed and serviced DIRECTV satellite systems in Illinois from approximately December 21, 2006 to July 1, 2015. Mr. Negray filed a consent to join the *Arnold* litigation on March 19, 2013.

111.    In many of the weeks Mr. Negray worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. Negray was not paid for all his working time. Mr. Negray estimates that in a typical week he spent as many as 30 to 35 hours on work tasks that were not paid.

112.    Mr. Negray brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Robert Shoemaker**

113.    Plaintiff Robert Shoemaker currently resides in Mount Carmel, Illinois. Mr. Shoemaker installed and serviced DIRECTV satellite systems in Illinois from approximately March 2008 to November 2010. Mr. Shoemaker filed a consent to join the *Arnold* litigation on February 8, 2013.

114.    In many of the weeks Mr. Shoemaker worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 65 hours per week. But Mr. Shoemaker was not paid for all his working time. Mr. Shoemaker estimates that in a typical week he spent approximately 15 to 25 hours on work tasks that were not paid.

115.    Mr. Shoemaker brings his claims against defendant DIRECTV.

**Plaintiff Oliver Silva**

116.    Plaintiff Oliver Silva currently resides in Cambria, Illinois. Mr. Silva installed and serviced DIRECTV satellite systems in Illinois from approximately November 2006 to the present. Mr. Silva filed a consent to join the *Arnold* litigation on February 6, 2013.

117.    In many of the weeks Mr. Silva worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Silva was not paid for all his working time. Mr. Silva estimates that in a typical week he spent approximately10 to 20 hours on work tasks that were not paid.

118.    Mr. Silva brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Dan Volk**

119.   Plaintiff Dan Volk currently resides in Bloomington, Illinois. Mr. Volk installed and serviced DIRECTV satellite systems in Illinois from approximately July 2004 to present. Mr. Volk filed a consent to join the *Arnold* litigation on March 1, 2013.

120.   In many of the weeks Mr. Volk worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. Volk was not paid for all his working time. Mr. Volk estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

121.   Mr. Volk brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff George Wallace**

122.   Plaintiff George Wallace currently resides in Abingdon, Illinois. Mr. Wallace installed and serviced DIRECTV satellite systems in Illinois and Iowa from approximately August 2010 to the present. Mr. Wallace filed a consent to join the *Arnold* litigation on February 5, 2013.

123.   In many of the weeks Mr. Wallace worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Wallace was not paid for all his working time. Mr. Wallace estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

124.   Mr. Wallace brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Joshua Wood**

125.   Plaintiff Joshua Wood currently resides in Marshall, Illinois. Mr. Wood installed and serviced DIRECTV satellite systems in Illinois and Indiana from approximately September 2005 to the present. Mr. Wood filed a consent to join the *Arnold* litigation on February 7, 2013.

126.   In many of the weeks Mr. Wood worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Wood was not paid for all his working time. Mr. Wood estimates that in a typical week he spent approximately 20 to 25 hours on work tasks that were not paid.

127.   Mr. Wood brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Brent Yancey**

128.   Plaintiff Brent Yancey currently resides in Du Quoin, Illinois. Mr. Yancey installed and serviced DIRECTV satellite systems in Illinois and Kentucky from approximately February 2010 to January 2011. Mr. Yancey filed a consent to join the *Arnold* litigation on February 8, 2013.

129.   In many of the weeks Mr. Yancey worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Yancey was not paid for all his working time. Mr. Yancey estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

130.   Mr. Yancey brings his claims against defendant DIRECTV.

**Plaintiff Henry Alexander**

131.   Plaintiff Henry Alexander currently resides in West Memphis, Arkansas. Mr. Alexander installed and serviced DIRECTV satellite systems in Arkansas, Missouri, Tennessee, and Mississippi from approximately May 1992 to May 2015. Mr. Alexander filed a consent to join the Arnold litigation on February 25, 2013.

132.   In many of the weeks Mr. Alexander worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 to 75 hours per week. But Mr. Alexander was not paid for all his working time. Mr. Alexander estimates that in a typical week he spent approximately 30 hours on work tasks that were not paid.

133.   Mr. Alexander brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Kenny Sanders**

134.   Plaintiff Kenny Sanders currently resides in Earle, Arkansas. Mr. Sanders installed and serviced DIRECTV satellite systems in Arkansas from approximately July 1, 2010 to September 22, 2011. Mr. Sanders filed a consent to join the *Arnold* litigation on February 8, 2013.

135.   In many of the weeks Mr. Sanders worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 71 hours per week. But Mr. Sanders was not paid for all his working time. Mr. Sanders estimates that in a typical week he spent approximately 16 hours on work tasks that were not paid.

136.   Mr. Sanders brings his claims against defendant DIRECTV.

**Plaintiff Jacob Jones**

137.   Plaintiff Jacob Jones currently resides in Tallahassee, Florida. Mr. Jones installed and serviced DIRECTV satellite systems in Florida from approximately June 4, 2009 to July 8, 2011. Mr. Jones filed a consent to join the Arnold litigation on February 19, 2013.

138.   In many of the weeks Mr. Jones worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Jones was not paid for all his working time. Mr. Jones estimates that in a typical week he spent approximately 25 hours on work tasks that were not paid.

139.   Mr. Jones brings his claims against defendant DIRECTV.

**Plaintiff Mayllel Medina**

140.   Plaintiff Mayllel Medina currently resides in Fort Lauderdale, Florida. Mr. Medina installed and serviced DIRECTV satellite systems in Florida and Louisiana from approximately July 2009 to July 2011. Mr. Medina filed a consent to join the Arnold litigation on March 12, 2013.

141.   In many of the weeks Mr. Medina worked for defendants the total hours worked for the week exceeded 40, often as many as 55 to 65 hours per week. But Mr. Medina was not paid for all his working time. Mr. Medina estimates that in a typical week he spent as many as 15 to 20 hours on work tasks that were not paid.

142.   Mr. Medina brings his claims against defendant DIRECTV.

**Plaintiff Alexander Aufischer**

143.    Plaintiff Alexander Aufischer currently resides in Stockton, Illinois. Mr. Aufischer installed and serviced DIRECTV satellite systems in Iowa from approximately August 2011 to December 2012. Mr. Aufischer filed a consent to join the Arnold litigation on March 18, 2013.

144.    In many of the weeks Mr. Aufischer worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Aufischer was not paid for all his working time. Mr. Aufischer estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

145.    Mr. Aufischer brings his claims against defendant DIRECTV.

**Plaintiff Frank Carroll**

146.    Plaintiff Frank Carroll currently resides in Greenwood, Indiana. Mr. Carroll installed and serviced DIRECTV satellite systems in Indiana from approximately February 13, 2006 to present. Mr. Carroll filed a consent to join the *Arnold* litigation on March 20, 2013.

147.    In many of the weeks Mr. Carroll worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 66 hours per week. But Mr. Carroll was not paid for all his working time. Mr. Carroll estimates that in a typical week he spent approximately 18 hours on work tasks that were not paid.

148.    Mr. Carroll brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Josh Fehribach**

149.    Plaintiff Josh Fehribach currently resides in Paoli, Indiana. Mr. Fehribach installed and serviced DIRECTV satellite systems in Indiana from approximately January 2010 to October 2013. Mr. Fehribach filed a consent to join the *Arnold* litigation on February 7, 2013.

150.    In many of the weeks Mr. Fehribach worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 55 to 60 hours per week. But Mr. Fehribach was not paid for all his working time. Mr. Fehribach estimates that in a typical week he spent approximately 15 to 20 hours on work tasks that were not paid.

151.    Mr. Fehribach brings his claims against defendant DIRECTV.

**Plaintiff Robby Jewell**

152.    Plaintiff Robby Jewell currently resides in Bloomfield, Indiana. Mr. Jewell installed and serviced DIRECTV satellite systems in Indiana from approximately June 2005 to May 2012. Mr. Jewell filed a consent to join the *Arnold* litigation on March 7, 2013.

153.    In many of the weeks Mr. Jewell worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Jewell was not paid for all his working time. Mr. Jewell estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

154.    Mr. Jewell brings his claims against defendant DIRECTV.

**Plaintiff Jeff Jewell**

155.   Plaintiff Jeff Jewell currently resides in North Vernon, Indiana. Mr. Jewell installed and serviced DIRECTV satellite systems in Indiana from approximately August 2009 to March 2011. Mr. Jewell filed a consent to join the *Arnold* litigation on March 1, 2013.

156.   In many of the weeks Mr. Jewell worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Jewell was not paid for all his working time. Mr. Jewell estimates that in a typical week he spent approximately 15 hours on work tasks that were not paid.

157.   Mr. Jewell brings his claims against defendant DIRECTV.

**Plaintiff Qamar Shafeek**

158.   Plaintiff Qamar Shafeek currently resides in Indianapolis, Indiana. Mr. Shafeek installed and serviced DIRECTV satellite systems in Indiana from approximately April 2009 to present. Mr. Shafeek filed a consent to join the *Arnold* litigation on March 18, 2013.

159.   In many of the weeks Mr. Shafeek worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 56 hours per week. But Mr. Shafeek was not paid for all his working time. Mr. Shafeek estimates that in a typical week he spent approximately 16 hours on work tasks that were not paid.

160.   Mr. Shafeek brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Curtis Stewart**

161.   Plaintiff Curtis Stewart currently resides in Oakland City, Indiana. Mr. Stewart installed and serviced DIRECTV satellite systems in Indiana from approximately August 2009 to June 2011. Mr. Stewart filed a consent to join the *Arnold* litigation on March 7, 2013.

162.   In many of the weeks Mr. Stewart worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 49 hours per week. But Mr. Stewart was not paid for all his working time. Mr. Stewart estimates that in a typical week he spent as many as 19 hours on work tasks that were not paid.

163.   Mr. Stewart brings his claims against defendant DIRECTV.


**Plaintiff Brad Wright**

164.   Plaintiff Brad Wright currently resides in Marion, IN. Mr. Wright installed and serviced DIRECTV satellite systems in Indiana from approximately October 2011 to June 2013. Mr. Wright filed a consent to join the *Arnold* litigation on March 7, 2013.

165.   In many of the weeks Mr. Wright worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 55 hours per week. But Mr. Wright was not paid for all his working time. Mr. Wright estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

166.   Mr. Wright brings his claims against defendant DIRECTV.

**Plaintiff Charlie Carroll**

167.   Plaintiff Charlie Carroll currently resides in London, Kentucky. Mr. Carroll installed and serviced DIRECTV satellite systems in Kentucky from approximately April 2009 to late 2013. Mr. Carroll filed a consent to join the *Arnold* litigation on February 7, 2013.

168.   In many of the weeks Mr. Carroll worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Carroll was not paid for all his working time. Mr. Carroll estimates that in a typical week he spent as many as 35 hours on work tasks that were not paid.

169.   Mr. Carroll brings his claims against defendant DIRECTV.

**Plaintiff Kevin Cleary**

170.   Plaintiff Kevin Cleary currently resides in Manchester, Kentucky. Mr. Cleary installed and serviced DIRECTV satellite systems in Kentucky from approximately January 2008 to present. Mr. Cleary filed a consent to join the *Arnold* litigation on February 7, 2013.

171.   In many of the weeks Mr. Cleary worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Cleary was not paid for all his working time. Mr. Cleary estimates that in a typical week he spent as many as 15 to 20 hours on work tasks that were not paid.

172.   Mr. Cleary brings his claims against defendant DIRECTV.

**Plaintiff Robby Dull**

173.    Plaintiff Robby Dull currently resides in Owensboro, Kentucky. Mr. Dull installed and serviced DIRECTV satellite systems in Kentucky from approximately August 2006 to present. Mr. Dull filed a consent to join the *Arnold* litigation on February 6, 2013.

174.    In many of the weeks Mr. Dull worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 52 to 72 hours per week. But Mr. Dull was not paid for all his working time. Mr. Dull estimates that in a typical week he spent as many as 10 to 20 hours on work tasks that were not paid.

175.    Mr. Dull brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Allen Gibbs**

176.    Plaintiff Allen Gibbs currently resides in Sturgis, Kentucky. Mr. Gibbs installed and serviced DIRECTV satellite systems in Indiana from approximately January 2009 to October 2010. Mr. Gibbs filed a consent to join the *Arnold* litigation on March 18, 2013.

177.    In many of the weeks Mr. Gibbs worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 to 75 hours per week. But Mr. Gibbs was not paid for all his working time. Mr. Gibbs estimates that in a typical week he spent as many as 35 hours on work tasks that were not paid.

178.    Mr. Gibbs brings his claims against defendant DIRECTV.

**Plaintiff Clint Goodwin**

179.   Plaintiff Clint Goodwin currently resides in Nicholasville, Kentucky. Mr. Goodwin installed and serviced DIRECTV satellite systems in Kentucky from approximately August 2013 to the present. Mr. Goodwin filed a consent to join the *Arnold* litigation on March 20, 2013.

180.   In many of the weeks Mr. Goodwin worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 45 to 50 hours per week. But Mr. Goodwin was not paid for all his working time. Mr. Goodwin estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

181.   Mr. Goodwin brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Clyde Hunt**

182.   Plaintiff Clyde Hunt currently resides in Brandenburg, Kentucky. Mr. Hunt installed and serviced DIRECTV satellite systems in Kentucky from approximately May 2009 to October 2010. Mr. Hunt filed a consent to join the *Arnold* litigation on February 27, 2013.

183.   In many of the weeks Mr. Hunt worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Hunt was not paid for all his working time. Mr. Hunt estimates that in a typical week he spent approximately 30 hours on work tasks that were not paid.

184.   Mr. Hunt brings his claims against defendant DIRECTV.

**Plaintiff Rick Klotz**

185.   Plaintiff Rick Klotz currently resides in Taylorsville, Kentucky. Mr. Klotz installed and serviced DIRECTV satellite systems in Kentucky from approximately August 2, 2009 to April 19, 2011. Mr. Klotz filed a consent to join the *Arnold* litigation on February 7, 2013.

186.   In many of the weeks Mr. Klotz worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 65 hours per week. But Mr. Klotz was not paid for all his working time. Mr. Klotz estimates that in a typical week he spent 20 on work tasks that were not paid.

187.   Mr. Klotz brings his claims against defendant DIRECTV.

**Plaintiff John Mira**

188.   Plaintiff John Mira currently resides in Herrin, Kentucky. Mr. Mira installed and serviced DIRECTV satellite systems in Kentucky, Illinois and Missouri from approximately July 2005 to November 2011. Mr. Mira filed a consent to join the *Arnold* litigation on March 7, 2013.

189.   In many of the weeks Mr. Mira worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Mira was not paid for all his working time. Mr. Mira estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

190.   Mr. Mira brings his claims against defendant DIRECTV.

**Plaintiff Malcolm Parsons**

191.   Plaintiff Malcom Parsons currently resides in Vine Grove, Kentucky. Mr. Parsons installed and serviced DIRECTV satellite systems in Kentucky and Indiana from approximately April 2011 to September 2013. Mr. Parsons filed a consent to join the *Arnold* litigation on March 18, 2013.

192.   In many of the weeks Mr. Parsons worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. Parsons was not paid for all his working time. Mr. Parsons estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

193.   Mr. Parsons brings his claims against defendant DIRECTV.

**Plaintiff Brian Wiley**

194.   Plaintiff Brian Wiley currently resides in Hodgenville, Kentucky. Mr. Wiley installed and serviced DIRECTV satellite systems in Kentucky from approximately May 2009 to November 2010 and August 2013 to March 24, 2015. Mr. Wiley filed a consent to join the *Arnold* litigation on February 4, 2013.

195.   In many of the weeks Mr. Wiley worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Wiley was not paid for all his working time. Mr. Wiley estimates that in a typical week he spent approximately 25 hours on work tasks that were not paid.

196.   Mr. Wiley brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Troy Wilhoite**

197.   Plaintiff Troy Wilhoite currently resides in Sanders, Kentucky. Mr. Wilhoite installed and serviced DIRECTV satellite systems in Kentucky, Indiana, and New Jersey from approximately October 2004 to July 2017. Mr. Wilhoite filed a consent to join the *Arnold* litigation on March 1, 2013.

198.   In many of the weeks Mr. Wilhoite worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Wilhoite was not paid for all his working time. Mr. Wilhoite estimates that in a typical week he spent approximately30 hours on work tasks that were not paid.

199.   Mr. Wilhoite brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Keith Bacon**

200.   Plaintiff Keith Bacon currently resides in Bossier City, Louisiana. Mr. Bacon installed and serviced DIRECTV satellite systems in Louisiana, Texas, and Arkansas from approximately December 2008 to the present. Mr. Bacon filed a consent to join the *Arnold* litigation on February 6, 2013.

201.   In many of the weeks Mr. Bacon worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 68 to 71 hours per week. But Mr. Bacon was not paid for all his working time. Mr. Bacon estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

202.   Mr. Bacon brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Daniel Boyett**

203.    Plaintiff Daniel Boyett currently resides in Winnfield, Louisiana. Mr. Boyett installed and serviced DIRECTV satellite systems in Louisiana from approximately March 2, 2005 to September 25, 2012. Mr. Boyett filed a consent to join the *Arnold* litigation on March 12, 2013.

204.    In many of the weeks Mr. Boyett worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 69 hours per week. But Mr. Boyett was not paid for all his working time. Mr. Boyett estimates that in a typical week he spent approximately 15 hours on work tasks that were not paid.

205.    Mr. Boyett brings his claims against defendant DIRECTV.

**Plaintiff Randolph Brown**

206.    Plaintiff Randolph Brown currently resides in Elizabethtown, Kentucky. Mr. Brown installed and serviced DIRECTV satellite systems in Kentucky from approximately April 2005 to February 2013. Mr. Brown filed a consent to join the *Arnold* litigation on March 12, 2013.

207.    In many of the weeks Mr. Brown worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. Brown was not paid for all his working time. Mr. Brown estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

208.    Mr. Brown brings his claims against defendant DIRECTV.

### Plaintiff Demario Charles

209.    Plaintiff Demario Charles currently resides in Shreveport, Louisiana. Mr. Charles installed and serviced DIRECTV satellite systems in Louisiana and Texas from approximately September 2010 to August 2012. Mr. Charles filed a consent to join the *Arnold* litigation on February 8, 2013.

210.    In many of the weeks Mr. Charles worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Charles was not paid for all his working time. Mr. Charles estimates that in a typical week he spent as many as 30 to 40 hours on work tasks that were not paid.

211.    Mr. Charles brings his claims against defendant DIRECTV.


### Plaintiff Gavin Common

212.    Plaintiff Gavin Common currently resides in Eunica, Louisiana.   Mr. Common installed and serviced DIRECTV satellite systems in Lousiana from approximately May 2009 to October 2010. Mr. Common filed a consent to join the *Arnold* litigation on February 13, 2013.

213.    In many of the weeks Mr. Common worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Common was not paid for all his working time. Mr. Common estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

214.    Mr. Common brings his claims against defendant DIRECTV.

**Plaintiff Wade Dison**

215.    Plaintiff Wade Dison currently resides in Gillette, Wyoming. Mr. Dison installed and serviced DIRECTV satellite systems in Louisiana from approximately October 2010 to February 2011. Mr. Dison filed a consent to join the *Arnold* litigation on February 20, 2013.

216.    In many of the weeks Mr. Dison worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 75 hours per week. But Mr. Dison was not paid for all his working time. Mr. Dison estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

217.    Mr. Dison brings his claims against defendant DIRECTV.


**Plaintiff Brandon Garrett**

218.    Plaintiff Brandon Garrett currently resides in Calhoun, Louisiana. Mr. Garrett installed and serviced DIRECTV satellite systems in Louisiana from approximately June 2011 to September 2016. Mr. Garrett filed a consent to join the *Arnold* litigation on February 11, 2013.

219.    In many of the weeks Mr. Garrett worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 65 hours per week. But Mr. Garrett was not paid for all his working time. Mr. Garrett estimates that in a typical week he spent as many as 20 to 25 hours on work tasks that were not paid.

220.    Mr. Garrett brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Fredrico Henry**

221.    Plaintiff Fredrico Henry currently resides in El Dorado, Arkansas. Mr. Henry installed and serviced DIRECTV satellite systems in Louisiana from approximately February 2011 to August 2012. Mr. Henry filed a consent to join the *Arnold* litigation on February 1, 2013.

222.    In many of the weeks Mr. Henry worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 50 to 70 hours per week. But Mr. Henry was not paid for all his working time. Mr. Henry estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

223.    Mr. Henry brings his claims against defendant DIRECTV.


**Plaintiff Shawun Knighton**

224.    Plaintiff Shawun Knighton currently resides in Spearsville, Louisiana. Mr. Knighton installed and serviced DIRECTV satellite systems in Louisiana from approximately 2003 to January 2012. Mr. Knighton filed a consent to join the *Arnold* litigation on February 5, 2013.

225.    In many of the weeks Mr. Knighton worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 63 hours per week. But Mr. Knighton was not paid for all his working time. Mr. Knighton estimates that in a typical week he spent approximately 15 to 20 hours on work tasks that were not paid.

226.    Mr. Knighton brings his claims against defendant DIRECTV.

**Plaintiff Danny McGraw**

227.   Plaintiff Danny McGraw currently resides in Bastrop, Louisiana. Mr. McGraw installed and serviced DIRECTV satellite systems in Louisiana from approximately February 2012 to October 2012. Mr. McGraw filed a consent to join the *Arnold* litigation on February 4, 2013.

228.   In many of the weeks Mr. McGraw worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, as many 75 hours per week. But Mr. McGraw was not paid for all his working time. Mr. McGraw estimates that in a typical week he spent as many as 35 hours on work tasks that were not paid.

229.   Mr. McGraw brings his claims against defendant DIRECTV.


**Plaintiff Ginger Miller**

230.   Plaintiff Ginger Miller currently resides in Mermentau, Louisiana. Ms. Miller installed and serviced DIRECTV satellite systems in Louisiana from approximately February 2012 to September 2013. Ms. Miller filed a consent to join the *Arnold* litigation on March 12, 2013.

231.   In many of the weeks Ms. Miller worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 73 hours per week. But Ms. Miller was not paid for all his working time. Ms. Miller estimates that in a typical week he spent approximately18 to 23 hours on work tasks that were not paid.

232.   Ms. Miller brings his claims against defendant DIRECTV.

**Plaintiff Shannon Tingstrom**

233.    Plaintiff Shannon Tingstrom currently resides in Henderson, Louisiana. Mr. Tingstrom installed and serviced DIRECTV satellite systems in Louisiana from approximately September 2010 to January 2016. Mr. Tingstrom filed a consent to join the *Arnold* litigation on March 18, 2013.

234.    In many of the weeks Mr. Tingstrom worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 75 hours per week. But Mr. Tingstrom was not paid for all his working time. Mr. Tingstrom estimates that in a typical week he spent approximately 20 to 25 hours on work tasks that were not paid.

235.    Mr. Tingstrom brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Steven Trahan**

236.    Plaintiff Steven Trahan currently resides in Welsh, Louisiana. Mr. Trahan installed and serviced DIRECTV satellite systems in Louisiana from approximately January 2010 to March 2011. Mr. Trahan filed a consent to join the *Arnold* litigation on February 25, 2013.

237.    In many of the weeks Mr. Trahan worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. Trahan was not paid for all his working time. Mr. Trahan estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

238.    Mr. Trahan brings his claims against defendant DIRECTV.

**Plaintiff James Dillon**

239.   Plaintiff James Dillon currently resides in Gorham, Maine. Mr. Dillon installed and serviced DIRECTV satellite systems in Maine from approximately November 26, 2008 to October 28, 2011. Mr. Dillon filed a consent to join the *Arnold* litigation on March 20, 2013.

240.   In many of the weeks Mr. Dillon worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically more than 40 hours per week. But Mr. Dillon was not paid for all his working time. Mr. Dillon estimates that in a typical week he spent at least ten hours on work tasks that were not paid.

241.   Mr. Dillon brings his claims against defendant DIRECTV.


**Plaintiff Daniel Doucette**

242.   Plaintiff Daniel Doucette currently resides in Fryeburg, Maine. Mr. Doucette installed and serviced DIRECTV satellite systems in Maine from approximately March 2007 to January 11, 2016. Mr. Doucette filed a consent to join the *Arnold* litigation on February 15, 2013.

243.   In many of the weeks Mr. Doucette worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 75hours per week. But Mr. Doucette was not paid for all his working time. Mr. Doucette estimates that in a typical week he spent as many as 15 to 20 hours on work tasks that were not paid.

244.   Mr. Doucette brings his claims against defendant DIRECTV.

**Plaintiff Rocky Gorbey**

245.   Plaintiff Rocky Gorbey currently resides in Warren, Maine. Mr. Gorbey installed and serviced DIRECTV satellite systems in Maine and New Hampshire from approximately September 2010 to April 2011. Mr. Gorbey filed a consent to join the *Arnold* litigation on February 11, 2013.

246.   In many of the weeks Mr. Gorbey worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 70 hours per week. But Mr. Gorbey was not paid for all his working time. Mr. Gorbey estimates that in a typical week he spent as many as 15 to 30 hours on work tasks that were not paid.

247.   Mr. Gorbey brings his claims against defendant DIRECTV.

**Plaintiff Gilberto Lopez**

248.   Plaintiff Gilberto Lopez currently resides in Auburn. Maine. Mr. Lopez installed and serviced DIRECTV satellite systems in Maine from approximately November 2008 to present. Mr. Lopez filed a consent to join the *Arnold* litigation on March 18, 2013.

249.   In many of the weeks Mr. Lopez worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 69 hours per week. But Mr. Lopez was not paid for all his working time. Mr. Lopez estimates that in a typical week he spent as many as 15 hours on work tasks that were not paid.

250.   Mr. Lopez brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Paul Mattingly**

251.   Plaintiff Paul Mattingly currently resides in Fairfield, Maine. Mr. Mattingly installed and serviced DIRECTV satellite systems in Maine from approximately August 2009 to February 2011. Mr. Mattingly filed a consent to join the *Arnold* litigation on March 21, 2013.

252.   In many of the weeks Mr. Mattingly worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Mattingly was not paid for all his working time. Mr. Mattingly estimates that in a typical week he spent as many as 30 to 35 hours on work tasks that were not paid.

253.   Mr. Mattingly brings his claims against defendant DIRECTV.


**Plaintiff James Southworth**

254.   Plaintiff James Southworth currently resides in Waterboro, Maine. Mr. Southworth installed and serviced DIRECTV satellite systems in Maine and New Hampshire from approximately December 2011 to June 2013. Mr. Southworth filed a consent to join the *Arnold* litigation on February 1, 2013.

255.   In many of the weeks Mr. Southworth worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Southworth was not paid for all his working time. Mr. Southworth estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

256.   Mr. Southworth brings his claims against defendant DIRECTV.

**Plaintiff Joshua Allen**

257.   Plaintiff Joshua Allen currently resides in Ferndale, Michigan. Mr. Allen installed and serviced DIRECTV satellite systems in Michigan from approximately October 2007 to April 2016. Mr. Allen filed a consent to join the *Arnold* litigation on March 1, 2013.

258.   In many of the weeks Mr. Allen worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Allen was not paid for all his working time. Mr. Allen estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

259.   Mr. Allen brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Brian Beeler**

260.   Plaintiff Brian Beeler currently resides in Southfield, Michigan. Mr. Beeler installed and serviced DIRECTV satellite systems in Michigan from approximately January 13, 2011 to August 1, 2011. Mr. Beeler filed a consent to join the *Arnold* litigation on February 11, 2013.

261.   In many of the weeks Mr. Beeler worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Beeler was not paid for all his working time. Mr. Beeler estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

Mr. Beeler brings his claims against defendant DIRECTV.

### Plaintiff Matthew Buchholz

262.    Plaintiff Matthew Buchholz currently resides in Spring Lake, Michigan. Mr. Buchholz installed and serviced DIRECTV satellite systems in Michigan from approximately April 2009 to June 2010. Mr. Buchholz filed a consent to join the *Arnold* litigation on March 12, 2013.

263.    In many of the weeks Mr. Buchholz worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. Buchholz was not paid for all his working time. Mr. Buchholz estimates that in a typical week he spent as many as 22 hours on work tasks that were not paid.

264.    Mr. Buchholz brings his claims against defendant DIRECTV.

### Plaintiff Timothy Burns

265.    Plaintiff Timothy Burns currently resides in Hudsonville, Michigan. Mr. Burns installed and serviced DIRECTV satellite systems in Michigan from approximately December 2005 to December 2011. Mr. Burns filed a consent to join the *Arnold* litigation on February 4, 2013.

266.    In many of the weeks Mr. Burns worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. Burns was not paid for all his working time. Mr. Burns estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

267.    Mr. Burns brings his claims against defendant DIRECTV.

**Plaintiff Christopher Grant**

268.    Plaintiff Christopher Grant currently resides in Big Rapids, Michigan. Mr. Grant installed and serviced DIRECTV satellite systems in Michigan from approximately September 2010 to July 2012. Mr. Grant filed a consent to join the *Arnold* litigation on March 1, 2013.

269.    In many of the weeks Mr. Grant worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Grant was not paid for all his working time. Mr. Grant estimates that in a typical week he spent as many as 25 hours on work tasks that were not paid.

270.    Mr. Grant brings his claims against defendant DIRECTV.

**Plaintiff Lonnie Harris**

271.    Plaintiff Lonnie Harris currently resides in Redford, Michigan. Mr. Harris installed and serviced DIRECTV satellite systems in Michigan from approximately October 2011 to May 2012. Mr. Harris filed a consent to join the *Arnold* litigation on January 31, 2013.

272.    In many of the weeks Mr. Harris worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 45 to 60 hours per week. But Mr. Harris was not paid for all his working time. Mr. Harris estimates that in a typical week he spent approximately 16 to 20 hours on work tasks that were not paid.

273.    Mr. Harris brings his claims against defendant DIRECTV.

**Plaintiff Scott Hickok**

274.   Plaintiff Scott Hickok currently resides in Grand Rapids, Michigan. Mr. Hickok installed and serviced DIRECTV satellite systems in Michigan from approximately November 2003 to November 2013. Mr. Hickok filed a consent to join the *Arnold* litigation on March 12, 2013.

275.   In many of the weeks Mr. Hickok worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Hickok was not paid for all his working time. Mr. Hickok estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

276.   Mr. Hickok brings his claims against defendant DIRECTV.

**Plaintiff Daniel Juras**

277.   Plaintiff Daniel Juras currently resides in Manistee, Michigan. Mr. Juras installed and serviced DIRECTV satellite systems in Michigan from approximately September 2011 to March 2013. Mr. Juras filed a consent to join the *Arnold* litigation on February 19, 2013.

278.   In many of the weeks Mr. Juras worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Juras was not paid for all his working time. Mr. Juras estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

279.   Mr. Juras brings his claims against defendant DIRECTV.

**Plaintiff Brent Lawson**

280.    Plaintiff Brent Lawson currently resides in Flushing, Michigan. Mr. Lawson installed and serviced DIRECTV satellite systems in Michigan from approximately March 1, 2011 to October 30, 2014. Mr. Lawson filed a consent to join the Arnold litigation on February 12, 2013.

281.    In many of the weeks Mr. Lawson worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. Lawson was not paid for all his working time. Mr. Lawson estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

282.    Mr. Lawson brings his claims against defendant both defendants DIRECTV and Multiband.


**Plaintiff Shannon McCavit**

283.    Plaintiff Shannon McCavit currently resides in Hillsdale, Michigan. Mr. McCavit installed and serviced DIRECTV satellite systems in Michigan from approximately July 2009 to July 2010. Mr. McCavit filed a consent to join the *Arnold* litigation on March 12, 2013.

284.    In many of the weeks Mr. McCavit worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 60 hours per week. But Mr. McCavit was not paid for all his working time. Mr. McCavit estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

285.    Mr. McCavit brings his claims against defendant DIRECTV.

**Plaintiff Scott McKellar**

286.    Plaintiff Scott McKellar currently resides in Kentwood, Michigan. Mr. McKellar installed and serviced DIRECTV satellite systems in Michigan from approximately April 2009 to January 2011. Mr. McKellar filed a consent to join the *Arnold* litigation on March 12, 2013.

287.    In many of the weeks Mr. McKellar worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. McKellar was not paid for all his working time. Mr. McKellar estimates that in a typical week he spent approximately 25 hours on work tasks that were not paid.

288.    Mr. McKellar brings his claims against defendant DIRECTV.

**Plaintiff Dennis Rogale**

289.    Plaintiff Dennis Rogale currently resides in Canton, Michigan. Mr. Rogale installed and serviced DIRECTV satellite systems in Michigan from approximately October 2011 to October 2012. Mr. Rogale filed a consent to join the *Arnold* litigation on February 4, 2013.

290.    In many of the weeks Mr. Rogale worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 58 hours per week. But Mr. Rogale was not paid for all his working time. Mr. Rogale estimates that in a typical week he spent approximately 18 hours on work tasks that were not paid.

291.    Mr. Rogale brings his claims against defendant DIRECTV.

**Plaintiff Travis Tracey**

292.   Plaintiff Travis Tracey currently resides in South Boardman, Michigan. Mr. Tracey installed and serviced DIRECTV satellite systems in Michigan from approximately January 2011 to August 2015. Mr. Tracey filed a consent to join the *Arnold* litigation on February 7, 2013.

293.   In many of the weeks Mr. Tracey worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 45 to 50 hours per week. But Mr. Tracey was not paid for all his working time. Mr. Tracey estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

294.   Mr. Tracey brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff John Turner**

295.   Plaintiff John Turner currently resides in Livonia, Michigan. Mr. Turner installed and serviced DIRECTV satellite systems in Michigan from approximately November 2011 to June 2014. Mr. Turner filed a consent to join the *Arnold* litigation on February 27, 2013.

296.   In many of the weeks Mr. Turner worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 to 70 hours per week. But Mr. Turner was not paid for all his working time. Mr. Turner estimates that in a typical week he spent approximately 30 hours on work tasks that were not paid.

297.   Mr. Turner brings his claims against defendant DIRECTV.

**Plaintiff Richard Brockmire**

298.    Plaintiff Richard Brockmire currently resides in Cape Girardeau, Missouri. Mr. Brockmire installed and serviced DIRECTV satellite systems in Missouri from approximately August 2011 to present. Mr. Brockmire filed a consent to join the *Arnold* litigation on March 7, 2013.

299.    In many of the weeks Mr. Brockmire worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically more than 40 hours per week. But Mr. Brockmire was not paid for all his working time. Mr. Brockmire estimates that in a typical week he spent at least ten hours on work tasks that were not paid.

300.    Mr. Brockmire brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff James Bates**

301.    Plaintiff James Bates currently resides in Memphis, Tennessee. Mr. Bates installed and serviced DIRECTV satellite systems in Mississippi from approximately 2003 to present. Mr. Bates filed a consent to join the *Arnold* litigation February 11, 2013.

302.    In many of the weeks Mr. Bates worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 50 to 70 hours per week. But Mr. Bates was not paid for all his working time. Mr. Bates estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

303.    Mr. Bates brings his claims against DIRECTV.

**Plaintiff Kendrick Freeman**

304.   Plaintiff Kendrick Freeman currently resides in Sardis, Mississippi. Mr. Freeman installed and serviced DIRECTV satellite systems in Mississippi, Tennessee, Louisiana, and Texas from approximately July 2010 to April 2014. Mr. Freeman filed a consent to join the *Arnold* litigation on February 7, 2013.

305.   In many of the weeks Mr. Freeman worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 66 hours per week. But Mr. Freeman was not paid for all his working time. Mr. Freeman estimates that in a typical week he spent approximately 12 to 20 hours on work tasks that were not paid.

306.   Mr. Freeman brings his claims against defendant DIRECTV.


**Plaintiff Kevin Gatewood**

307.   Plaintiff Kevin Gatewood currently resides in Horn Lake, Mississippi. Mr. Gatewood installed and serviced DIRECTV satellite systems in Mississippi from approximately September 2007 to present. Mr. Gatewood filed a consent to join the *Arnold* litigation on February 7, 2013.

308.   In many of the weeks Mr. Gatewood worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 68 hours per week. But Mr. Gatewood was not paid for all his working time. Mr. Gatewood estimates that in a typical week he spent approximately 14 hours on work tasks that were not paid.

309.   Mr. Gatewood brings his claims against defendant DIRECTV.

**Plaintiff Randy Middleton**

310.   Plaintiff Randy Middleton currently resides in Courtland, Mississippi. Mr. Middleton installed and serviced DIRECTV satellite systems in Mississippi from approximately 2007 to June 2013. Mr. Middleton filed a consent to join the *Arnold* litigation on February 5, 2013.

311.   In many of the weeks Mr. Middleton worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Middleton was not paid for all his working time. Mr. Middleton estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

312.   Mr. Middleton brings his claims against defendant DIRECTV.

**Plaintiff Kenneth Ross**

313.   Plaintiff Kenneth Ross currently resides in Lake Horn, Mississippi. Mr. Ross installed and serviced DIRECTV satellite systems in Mississippi from approximately August 2009 to the present. Mr. Ross filed a consent to join the *Arnold* litigation on March 19, 2013.

314.   In many of the weeks Mr. Ross worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 67 hours per week. But Mr. Ross was not paid for all his working time. Mr. Ross estimates that in a typical week he spent approximately15 to 20 hours on work tasks that were not paid.

315.   Mr. Ross brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Brien Poster**

316.    Plaintiff Brien Poster currently resides in Murphy, North Carolina. Mr. Poster installed and serviced DIRECTV satellite systems in North Carolina from approximately May 2011 to December 2012. Mr. Poster filed a consent to join the *Arnold* litigation on February 15, 2013.

317.    In many of the weeks Mr. Poster worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Poster was not paid for all his working time. Mr. Poster estimates that in a typical week he spent approximately 15 hours on work tasks that were not paid.

318.    Mr. Poster brings his claims against defendant DIRECTV.

**Plaintiff Geramel Cedeno**

319.    Plaintiff Geramel Cedeno currently resides in Lynn, Massachusetts. Mr. Cedeno installed and serviced DIRECTV satellite systems in New Hampshire from approximately October 11, 2010 to present. Mr. Cedeno filed a consent to join the *Arnold* litigation on February 4, 2013.

320.    In many of the weeks Mr. Cedeno worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 63 hours per week. But Mr. Cedeno was not paid for all his working time. Mr. Cedeno estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

321.    Mr. Cedeno brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff James Harris**

322.   Plaintiff James Harris currently resides in Piscataway, New Jersey. Mr. Harris installed and serviced DIRECTV satellite systems in New Jersey, Louisiana and Maryland from approximately September 2009 to September 2014. Mr. Harris filed a consent to join the *Arnold* litigation on February 6, 2013.

323.   In many of the weeks Mr. Harris worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Harris was not paid for all his working time. Mr. Harris estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

324.   Mr. Harris brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Clifford Minor**

325.   Plaintiff Clifford Minor currently resides in Howell, New Jersey. Mr. Minor installed and serviced DIRECTV satellite systems in New Jersey from approximately October 2011 to present. Mr. Minor filed a consent to join the *Arnold* litigation on January 31, 2013.

326.   In many of the weeks Mr. Minor worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 66 hours per week. But Mr. Minor was not paid for all his working time. Mr. Minor estimates that in a typical week he spent approximately 18 hours on work tasks that were not paid.

327.   Mr. Minor brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Anthony Reeder**

328.   Plaintiff Anthony Reeder currently resides in Stewartsville, New Jersey. Mr. Reeder installed and serviced DIRECTV satellite systems in New Jersey and Pennsylvania from approximately November 10, 2011 to May 16, 2012. Mr. Reeder filed a consent to join the *Arnold* litigation on February 15, 2013.

329.   In many of the weeks Mr. Reeder worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 70 hours per week. But Mr. Reeder was not paid for all his working time. Mr. Reeder estimates that in a typical week he spent as many as 15 to 30 hours on work tasks that were not paid.

330.   Mr. Reeder brings his claims against defendant DIRECTV.


**Plaintiff Brandon Adams**

331.   Plaintiff Brandon Adams currently resides in Akron, Ohio. Mr. Adams installed and serviced DIRECTV satellite systems in Ohio from approximately January 2012 to August 2012. Mr. Adams filed a consent to join the *Arnold* litigation on February 5, 2013.

332.   In many of the weeks Mr. Adams worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 45 to 55 hours per week. But Mr. Adams was not paid for all his working time. Mr. Adams estimates that in a typical week he spent approximately 12 hours on work tasks that were not paid.

333.   Mr. Adams brings his claims against defendant DIRECTV.

**Plaintiff Arnold Bragg**

334.    Plaintiff Arnold Bragg currently resides in North Fairfield, Ohio. Mr. Bragg installed and serviced DIRECTV satellite systems in Ohio from approximately January 2008 to July 2015. Mr. Bragg filed a consent to join the *Arnold* litigation on February 27, 2013.

335.    In many of the weeks Mr. Bragg worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 55 to 65 hours per week. But Mr. Bragg was not paid for all his working time. Mr. Bragg estimates that in a typical week he spent approximately 20 to 25 hours on work tasks that were not paid.

336.    Mr. Bragg brings his claims against both defendants DIRECTV and Multiband.


**Plaintiff Cody Fiddler**

337.    Plaintiff Cody Fiddler currently resides in Carrollton, Ohio. Mr. Fiddler installed and serviced DIRECTV satellite systems in Ohio from approximately August 2005 to November 2012. Mr. Fiddler filed a consent to join the *Arnold* litigation on March 12, 2013.

338.    In many of the weeks Mr. Fiddler worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 72 hours per week. But Mr. Fiddler was not paid for all his working time. Mr. Fiddler estimates that in a typical week he spent as many as 18 to 22 on work tasks that were not paid.

339.    Mr. Fiddler brings his claims against defendant DIRECTV.

**Plaintiff Joshua Fleischer**

340.    Plaintiff Joshua Fleischer currently resides in Navarre, OH. Mr. Fleischer installed and serviced DIRECTV satellite systems in Ohio from approximately October 2006 to present. Mr. Fleischer filed a consent to join the *Arnold* litigation on March 14, 2013.

341.    In many of the weeks Mr. Fleischer worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Fleischer was not paid for all his working time. Mr. Fleischer estimates that in a typical week he spent as many as 15 hours on work tasks that were not paid.

342.    Mr. Fleischer brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Paul Fribourg**

343.    Plaintiff Paul Fribourg currently resides in Lakewood, Ohio. Mr. Fribourg installed and serviced DIRECTV satellite systems in Ohio from approximately February 14, 2008 to February 26, 2016. Mr. Fribourg filed a consent to join the *Arnold* litigation on February 6, 2013.

344.    In many of the weeks Mr. Fribourg worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 45 to 50 hours per week. But Mr. Fribourg was not paid for all his working time. Mr. Fribourg estimates that in a typical week he spent approximately five to ten hours on work tasks that were not paid.

345.    Mr. Fribourg brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Timothy Fry**

346.    Plaintiff Timothy Fry currently resides in Wooster, Ohio. Mr. Fry installed and serviced DIRECTV satellite systems in Ohio from approximately May 2009 to August 2011. Mr. Fry filed a consent to join the *Arnold* litigation on March 19. 2013.

347.    In many of the weeks Mr. Fry worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 65 hours per week. But Mr. Fry was not paid for all his working time. Mr. Fry estimates that in a typical week he spent as many as 10 to 25 hours on work tasks that were not paid.

348.    Mr. Fry brings his claims against defendant DIRECTV.


**Plaintiff Phil Gahring**

349.    Plaintiff Phil Gahring currently resides in Akron, Ohio. Mr. Gahring installed and serviced DIRECTV satellite systems in Ohio from approximately 2009 to present. Mr. Gahring filed a consent to join the *Arnold* litigation on March 18, 2013.

350.    In many of the weeks Mr. Gahring worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 50 to 65 hours per week. But Mr. Gahring was not paid for all his working time. Mr. Gahring estimates that in a typical week he spent approximately 10 to 25 hours on work tasks that were not paid.

351.    Mr. Gahring brings his claims against defendant DIRECTV.

**Plaintiff Kurtis Hindel**

352.    Plaintiff Kurtis Hindel currently resides in Norwalk, Ohio. Mr. Hindel installed and serviced DIRECTV satellite systems in Ohio from approximately October 2006 to May 2012. Mr. Hindel filed a consent to join the *Arnold* litigation on February 25, 2013.

353.    In many of the weeks Mr. Hindel worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Hindel was not paid for all his working time. Mr. Hindel estimates that in a typical week he spent as many as 10 to 20 hours on work tasks that were not paid.

354.    Mr. Hindel brings his claims against defendant DIRECTV.


**Plaintiff John Kelly**

355.    Plaintiff John Kelly currently resides in Plymouth, Ohio. Mr. Kelly installed and serviced DIRECTV satellite systems in Ohio from approximately September 10, 2009 to August 11, 2014. Mr. Kelly filed a consent to join the *Arnold* litigation on February 11, 2013.

356.    In many of the weeks Mr. Kelly worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Kelly was not paid for all his working time. Mr. Kelly estimates that in a typical week he spent as many as 20 hours on work tasks that were not paid.

357.    Mr. Kelly brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Donald Lemon**

358.   Plaintiff Donald Lemon currently resides in Akron, Ohio. Mr. Lemon installed and serviced DIRECTV satellite systems in Ohio from approximately December 13, 2007 to October 30, 2012. Mr. Lemon filed a consent to join the *Arnold* litigation on February 5, 2013.

359.   In many of the weeks Mr. Lemon worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 72 hours per week. But Mr. Lemon was not paid for all his working time. Mr. Lemon estimates that in a typical week he spent approximately 18 hours on work tasks that were not paid.

360.   Mr. Lemon brings his claims against defendant DIRECTV.


**Plaintiff James McCann**

361.   Plaintiff James McCann currently resides in Youngstown, Ohio. Mr. McCann installed and serviced DIRECTV satellite systems in Ohio from approximately July 2011 to present. Mr. McCann filed a consent to join the *Arnold* litigation on February 20, 2013.

362.   In many of the weeks Mr. McCann worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. McCann was not paid for all his working time. Mr. McCann estimates that in a typical week he spent as many as 15 to 20 hours on work tasks that were not paid.

363.   Mr. McCann brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Alexander Michel**

364.    Plaintiff Alexander Michel currently resides in Sandusky, Ohio. Mr. Michel installed and serviced DIRECTV satellite systems in Ohio from approximately March 2004 to present. Mr. Michel filed a consent to join the *Arnold* litigation on February 25, 2013.

365.    In many of the weeks Mr. Michel worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 53 to 70 hours per week. But Mr. Michel was not paid for all his working time. Mr. Michel estimates that in a typical week he spent approximately 8 to 15 hours on work tasks that were not paid.

366.    Mr. Michel brings his claims against defendant DIRECTV.

**Plaintiff John Monnot**

367.    Plaintiff John Monnot currently resides in Canton, Ohio. Mr. Monnot installed and serviced DIRECTV satellite systems in Ohio from approximately October 3, 2005 to present. Mr. Monnot filed a consent to join the *Arnold* litigation on February 15, 2013.

368.    In many of the weeks Mr. Monnot worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 40 to 70 hours per week. But Mr. Monnot was not paid for all his working time. Mr. Monnot estimates that in a typical week he spent approximately five to six hours on work tasks that were not paid.

369.    Mr. Monnot brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Rick Ohmit**

370.   Plaintiff Rick Ohmit currently resides in Fairfield, Ohio. Mr. Ohmit installed and serviced DIRECTV satellite systems in Ohio from approximately November 2008 to May 2013. Mr. Ohmit filed a consent to join the *Arnold* litigation on February 13, 2013.

371.   In many of the weeks Mr. Ohmit worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Ohmit was not paid for all his working time. Mr. Ohmit estimates that in a typical week he spent approximately 25 hours on work tasks that were not paid.

372.   Mr. Ohmit brings his claims against defendant DIRECTV.


**Plaintiff Darrell Ware**

373.   Plaintiff Darrell Ware currently resides in Garfield Heights, Ohio. Mr. Ware installed and serviced DIRECTV satellite systems in Ohio from approximately May 1, 2008 to December 23, 2010. Mr. Ware filed a consent to join the *Arnold* litigation on February 20, 2013.

374.   In many of the weeks Mr. Ware worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 65 hours per week. But Mr. Ware was not paid for all his working time. Mr. Ware estimates that in a typical week he spent approximately 20 to 25 hours on work tasks that were not paid.

375.   Mr. Ware brings his claims against defendant DIRECTV.

**Plaintiff Mark Watts**

376.   Plaintiff Mark Watts currently resides in Cincinnati, Ohio. Mr. Watts installed and serviced DIRECTV satellite systems in Ohio and Indiana from approximately November 2003 to the present. Mr. Watts filed a consent to join the *Arnold* litigation on February 19, 2013.

377.   In many of the weeks Mr. Watts worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Watts was not paid for all his working time. Mr. Watts estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

378.   Mr. Watts brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Paul Young**

379.   Plaintiff Paul Young currently resides in Minerva, Ohio. Mr. Young installed and serviced DIRECTV satellite systems in Ohio from approximately April 5, 2004 to November 6, 2012. Mr. Young filed a consent to join the *Arnold* litigation on February 12, 2013.

380.   In many of the weeks Mr. Young worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Young was not paid for all his working time. Mr. Young estimates that in a typical week he spent approximately 17 hours on work tasks that were not paid.

381.   Mr. Young brings his claims against defendant DIRECTV.

**Plaintiff Richard Brown**

382.    Plaintiff Richard Brown currently resides in Robinsonville, Mississippi. Mr. Brown installed and serviced DIRECTV satellite systems in Tennessee from approximately October 2006 to present. Mr. Brown filed a consent to join the *Arnold* litigation on March 8, 2013.

383.    In many of the weeks Mr. Brown worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 57 hours per week. But Mr. Brown was not paid for all his working time. Mr. Brown estimates that in a typical week he spent approximately 12 hours on work tasks that were not paid.

384.    Mr. Brown brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Justin Canada**

385.    Plaintiff Justin Canada currently resides in Rutherford, Tennessee. Mr. Canada installed and serviced DIRECTV satellite systems in Tennessee from approximately August 2007 to February 2014. Mr. Canada filed a consent to join the *Arnold* litigation on February 20, 2013.

386.    In many of the weeks Mr. Canada worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 65 hours per week. But Mr. Canada was not paid for all his working time. Mr. Canada estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

387.    Mr. Canada brings his claims against defendant DIRECTV.

**Plaintiff Daniel Carpenter**

388.    Plaintiff Daniel Carpenter currently resides in Cordova, Tennessee. Mr. Carpenter installed and serviced DIRECTV satellite systems in Tennessee from approximately January 18, 2007 to April 21, 2016. Mr. Carpenter filed a consent to join the *Arnold* litigation on February 8, 2013.

389.    In many of the weeks Mr. Carpenter worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 hours per week. But Mr. Carpenter was not paid for all his working time. Mr. Carpenter estimates that in a typical week he spent as many as 20 hours on work tasks that were not paid.

390.    Mr. Carpenter brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Carlos Gholston**

391.    Plaintiff Carlos Gholston currently resides in Cordova, Tennessee. Mr. Gholston installed and serviced DIRECTV satellite systems in Tennessee and Mississippi from approximately April 2008 to the present. Mr. Gholston filed a consent to join the *Arnold* litigation on March 1, 2013.

392.    In many of the weeks Mr. Gholston worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Gholston was not paid for all his working time. Mr. Gholston estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

393.    Mr. Gholston brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff William Holloway**

394. Plaintiff William Holloway currently resides in Cordova, Tennessee. Mr. Holloway installed and serviced DIRECTV satellite systems in Tennessee from approximately July 2005 to January 2012. Mr. Holloway filed a consent to join the *Arnold* litigation on March 3, 2013.

395. In many of the weeks Mr. Holloway worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 50 to 70 hours per week. But Mr. Holloway was not paid for all his working time. Mr. Holloway estimates that in a typical week he spent as many as 15 to 30 hours on work tasks that were not paid.

396. Mr. Holloway brings his claims against defendant DIRECTV.

**Plaintiff Carl Osborne**

397. Plaintiff Carl Osborne currently resides in Memphis, Tennessee. Mr. Osborne installed and serviced DIRECTV satellite systems in Tennessee from approximately October 2011 to November 2014. Mr. Osborne filed a consent to join the *Arnold* litigation on February 6, 2013.

398. In many of the weeks Mr. Osborne worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 60 to 70 hours per week. But Mr. Osborne was not paid for all his working time. Mr. Osborne estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

399. Mr. Osborne brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Courtney Rhyan**

400.    Plaintiff Courtney Rhyan currently resides in Cordova, Tennessee. Mr. Rhyan installed and serviced DIRECTV satellite systems in Tennessee from approximately June 22, 2010 to September 23, 2013. Mr. Rhyan filed a consent to join the *Arnold* litigation on February 8, 2013.

401.    In many of the weeks Mr. Rhyan worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Rhyan was not paid for all his working time. Mr. Rhyan estimates that in a typical week he spent approximately 25 hours on work tasks that were not paid.

402.    Mr. Rhyan brings his claims against defendant DIRECTV.

**Plaintiff Kasim Rhyan**

403.    Plaintiff Kasim Rhyan currently resides in Memphis, Tennessee. Mr. Rhyan installed and serviced DIRECTV satellite systems in Tennessee from approximately March 24, 2011 to August 24, 2016. Mr. Rhyan filed a consent to join the *Arnold* litigation on February 19, 2013.

404.    In many of the weeks Mr. Rhyan worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 60 hours per week. But Mr. Rhyan was not paid for all his working time. Mr. Rhyan estimates that in a typical week he spent approximately 12 hours on work tasks that were not paid.

405.    Mr. Rhyan brings his claims against both defendants DIRECTV and Multiband.

### Plaintiff Spanky Robertson

406.    Plaintiff Spanky Robertson currently resides in Hendersonville, Tennessee. Mr. Robertson installed and serviced DIRECTV satellite systems in Tennessee, Kentucky, Illinois, Indiana, Nebraska, Missouri, Kansas, Oklahoma, Texas, Louisiana, and Arkansas from approximately September 28, 2009 to April 2016. Mr. Robertson filed a consent to join the *Arnold* litigation on February 12, 2013.

407.    In many of the weeks Mr. Robertson worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 55 to 70 hours per week. But Mr. Robertson was not paid for all his working time. Mr. Robertson estimates that in a typical week he spent approximately 15 to 25 hours on work tasks that were not paid.

408.    Mr. Robertson brings his claims against both defendants DIRECTV and Multiband.

### Plaintiff Jason Rousseau

409.    Plaintiff Jason Rousseau currently resides in Arlington, Tennessee. Mr. Rousseau installed and serviced DIRECTV satellite systems in Tennessee from approximately April 16, 2009 to March 9, 2015. Mr. Rousseau filed a consent to join the *Arnold* litigation on February 19, 2013.

410.    In many of the weeks Mr. Rousseau worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 55 hours per week. But Mr. Rousseau was not paid for all his working time. Mr. Rousseau estimates that in a typical week he spent approximately 10 hours on work tasks that were not paid.

411.   Mr. Rousseau brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Gregory Smith**

412.   Plaintiff Gregory Smith currently resides in Bartlett, Tennessee. Mr. Smith installed and serviced DIRECTV satellite systems in Tennessee, Mississippi, and Arkansas from approximately April 2009 to the present. Mr. Smith filed a consent to join the *Arnold* litigation on February 5, 2013.

413.   In many of the weeks Mr. Smith worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 50 to 55 hours per week. But Mr. Smith was not paid for all his working time. Mr. Smith estimates that in a typical week he spent approximately 15 hours on work tasks that were not paid.

414.   Mr. Smith brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Michael Vaughn**

415.   Plaintiff Michael Vaughn currently resides in Olive Branch, Mississippi. Mr. Vaughn installed and serviced DIRECTV satellite systems in Tennessee from approximately January 2006 to present. Mr. Vaughn filed a consent to join the *Arnold* litigation on February 5, 2013.

416.   In many of the weeks Mr. Vaughn worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 67 hours per week. But Mr. Vaughn was not paid for all his working time. Mr. Vaughn estimates that in a typical week he spent as many as 29 hours on work tasks that were not paid.

417.   Mr. Vaughn brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff Douglas Allen**

418.   Plaintiff Douglas Allen currently resides in Warren, Texas. Mr. Allen installed and serviced DIRECTV satellite systems in Texas from approximately September 2010 November 2011. Mr. Allen filed a consent to join the *Arnold* litigation on February 11, 2013.

419.   In many of the weeks Mr. Allen worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 60 hours per week. But Mr. Allen was not paid for all his working time. Mr. Allen estimates that in a typical week he spent as many as 20 to 30 hours on work tasks that were not paid.

420.   Mr. Allen brings his claims against defendant DIRECTV.

**Plaintiff Ruthen Chun**

421.   Plaintiff Ruthen Chun currently resides in Houston, Texas. Mr. Chun installed and serviced DIRECTV satellite systems in Texas from approximately December 2005 to October 2011. Mr. Chun filed a consent to join the *Arnold* litigation on March 21, 2013.

422.   In many of the weeks Mr. Chun worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Chun was not paid for all his working time. Mr. Chun estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

423.   Mr. Chun brings his claims against defendant DIRECTV.

**Plaintiff Benjamin Clark**

424.   Plaintiff Benjamin Clark currently resides in Winnsboro, Texas. Mr. Clark installed and serviced DIRECTV satellite systems in Texas from approximately June 2005 to March 2013. Mr. Clark filed a consent to join the *Arnold* litigation on March 18, 2013.

425.   In many of the weeks Mr. Clark worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 56 hours per week. But Mr. Clark was not paid for all his working time. Mr. Clark estimates that in a typical week he spent approximately 20 to 25 hours on work tasks that were not paid.

426.   Mr. Clark brings his claims against defendant DIRECTV.


**Plaintiff Stephen Collins**

427.   Plaintiff Stephen Collins currently resides in Nacogdoches, Texas. Mr. Collins installed and serviced DIRECTV satellite systems in Texas from approximately July 2007 to July 2016. Mr. Collins filed a consent to join the *Arnold* litigation on March 1, 2013.

428.   In many of the weeks Mr. Collins worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Collins was not paid for all his working time. Mr. Collins estimates that in a typical week he spent approximately 10 to 20 hours on work tasks that were not paid.

429.   Mr. Collins brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff John King**

430.   Plaintiff John King currently resides in Leander, Texas. Mr. King installed and serviced DIRECTV satellite systems in Texas from approximately July 2007 to June 2011. Mr. King filed a consent to join the *Arnold* litigation on February 20, 2013.

431.   In many of the weeks Mr. King worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. King was not paid for all his working time. Mr. King estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

432.   Mr. King brings his claims against defendant DIRECTV.


**Plaintiff Jose Lizama**

433.   Plaintiff Jose Lizama currently resides in Houston, Texas. Mr. Lizama installed and serviced DIRECTV satellite systems in Texas from approximately February 6, 2006 to present. Mr. Lizama filed a consent to join the *Arnold* litigation on February 8, 2013.

434.   In many of the weeks Mr. Lizama worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 46 to 55 hours per week. But Mr. Lizama was not paid for all his working time. Mr. Lizama estimates that in a typical week he spent approximately 10 to 15 hours on work tasks that were not paid.

435.   Mr. Lizama brings his claims against both defendants DIRECTV and Multiband.

**Plaintiff James Maidens**

436.   Plaintiff James Maidens currently resides in New Boston, Texas. Mr. Maidens installed and serviced DIRECTV satellite systems in Texas from approximately 2005 to 2012. Mr. Maidens filed a consent to join the *Arnold* litigation on February 27, 2013.

437.   In many of the weeks Mr. Maidens worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 56 hours per week. But Mr. Maidens was not paid for all his working time. Mr. Maidens estimates that in a typical week he spent approximately 12 hours on work tasks that were not paid.

438.   Mr. Maidens brings his claims against defendant DIRECTV.


**Plaintiff Jason Richardson**

439.   Plaintiff Jason Richardson currently resides in La Porte, Texas. Mr. Richardson installed and serviced DIRECTV satellite systems in Texas from approximately August 2012 to March 2013. Mr. Richardson filed a consent to join the *Arnold* litigation on March 27, 2013.

440.   In many of the weeks Mr. Richardson worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, typically 40 to 50 hours per week. But Mr. Richardson was not paid for all his working time. Mr. Richardson estimates that in a typical week he spent approximately 5 to 10 hours on work tasks that were not paid.

441.   Mr. Richardson brings his claims against defendant DIRECTV.

**Plaintiff Carl Schnackel**

442.    Plaintiff Carl Schnackel currently resides in The Colony, Texas. Mr. Schnackel installed and serviced DIRECTV satellite systems in Texas and Oklahoma from approximately summer 2008 to the present. Mr. Schnackel filed a consent to join the *Arnold* litigation on March 12, 2013.

443.    In many of the weeks Mr. Schnackel worked for defendants the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Schnackel was not paid for all his working time. Mr. Schnackel estimates that in a typical week he spent as many as 35 hours on work tasks that were not paid. Mr. Schnackel was also frequently assessed chargebacks that denied him earned compensation and resulted in additional working time going unpaid.

444.    Mr. Schnackel brings his claims against defendant DIRECTV and Multiband.

**Plaintiff Glen Steck**

445.    Plaintiff Glen Steck currently resides in Montgomery, Texas. Mr. Steck installed and serviced DIRECTV satellite systems in Texas from approximately March 2010 to July 2012. Mr. Steck filed a consent to join the *Arnold* litigation on February 20, 2013.

446.    In many of the weeks Mr. Steck worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 65 hours per week. But Mr. Steck was not paid for all his working time. Mr. Steck estimates that in a typical week he spent approximately 20 hours on work tasks that were not paid.

447.   Mr. Steck brings his claims against defendant DIRECTV.

**Plaintiff Olatunbosun Sunmonu**

448.   Plaintiff Olatunbosun Sunmonu currently resides in Katy, Texas. Mr. Sunmonu installed and serviced DIRECTV satellite systems in Texas from approximately October 2009 to April 2010. Mr. Sunmonu filed a consent to join the *Arnold* litigation on March 18, 2013.

449.   In many of the weeks Mr. Sunmonu worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Sunmonu was not paid for all his working time. Mr. Sunmonu estimates that in a typical week he spent as many as 35 hours on work tasks that were not paid.

450.   Mr. Sunmonu brings his claims defendant DIRECTV.

**Plaintiff Terry Scanlon**

451.   Plaintiff Terry Scanlon currently resides in Jeffersonville, Vermont. Mr. Scanlon installed and serviced DIRECTV satellite systems in New Hampshire from approximately April 2009 to March 2010. Mr. Scanlon filed a consent to join the *Arnold* litigation on February 5, 2013.

452.   In many of the weeks Mr. Scanlon worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 70 hours per week. But Mr. Scanlon was not paid for all his working time. Mr. Scanlon estimates that in a typical week he spent approximately 30 hours on work tasks that were not paid.

453.   Mr. Scanlon brings his claims against defendant DIRECTV.

**Plaintiff Allan Arel**[1]

454.    Plaintiff Allan Arel currently resides in Barton, Vermont. Mr. Arel installed and serviced DIRECTV satellite systems in Vermont from approximately August 2009 to September 2010. Mr. Arel filed a consent to join the *Arnold* litigation on February 13, 2013.

455.    In many of the weeks Mr. Arel worked for Multiband and DIRECTV the total hours worked for the week exceeded 40, often as many as 75 hours per week. But Mr. Arel was not paid for all his working time. Mr. Arel estimates that in a typical week he spent as many as 30 hours on work tasks that were not paid.

456.    Mr. Arel brings his claims against defendant DIRECTV.

## COUNT I
## Violation of the Fair Labor Standards Act of 1938

1.    Plaintiffs re-allege all allegations set forth above.

2.    At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

3.    The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

4.    Defendants are subject to the requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in

---

[1] Plaintiff Arel is also pursuing claims against DIRECTV in *Chesley et al. v. DIRECTV et al.*, case number 1:14-CV-00468-PJB, for a time period separate from the one covered in this action.

commerce. Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

5.      Defendants violated the FLSA by failing to pay all wages, including overtime wages, due to Plaintiffs.

6.      Defendants violated the FLSA by failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed.

7.      Plaintiffs are entitled to damages equal to their unpaid wages and overtime premium pay within the three years preceding the filing of their consent to join forms in the *Arnold* litigation, plus applicable periods of tolling, because Defendants acted willfully and knew or showed reckless disregard in their violation of the FLSA.

8.      Defendants' unlawful conduct was willful because, among other reasons described herein, Defendants knew, or should have known, that their fissured employment scheme utilizes a piece-rate pay system that unlawfully denies Plaintiffs earned wages.

9.      Defendants have neither acted in good faith, nor with reasonable grounds to believe that their actions and omissions comply with the FLSA.  As a result, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

10.     If the Court finds that Defendants acted in good faith in failing to pay Plaintiffs overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

**WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs individually and:

      a.      Award damages for unpaid wages under 29 U.S.C. § 216(b);

      b.      Award liquidated damages under 29 U.S.C. § 216(b) or, in the alternative, prejudgment interest;

      c.      Award reasonable attorneys' fees and costs under 29 U.S.C. § 216(b); and

      d.      Grant any further relief that the Court may deem just and equitable.

Dated: July 28, 2017                    Respectfully submitted,

                                        s/Paul J. Lukas
                                        **NICHOLS KASTER, PLLP**
                                        Paul J. Lukas, MN Bar No. 22084X
                                        4600 IDS Center, 80 South 8th Street
                                        Minneapolis, MN 55402
                                        Telephone:  612-256-3205
                                        Facsimile:  612-215-6870
                                        Email:  lukas@nka.com

                                        **STUEVE SIEGEL HANSON LLP**
                                        George A. Hanson, MO Bar No. 43450*
                                        Crystal R. Cook, MO Bar No. 66852*
                                        460 Nichols Road, Suite 200
                                        Kansas City, Missouri 64112
                                        Telephone:  816-714-7100
                                        Facsimile:  816-714-7101
                                        Email:  hanson@stuevesiegel.com
                                        Email: cook@stuevesiegel.com

                                        **LEAR WERTS LLP**
                                        Bradford B. Lear, MO Bar No. 53204*
                                        Todd C. Werts, MO Bar No. 53288*
                                        2003 W. Broadway, Ste. 107
                                        Columbia, Missouri 65203
                                        Telephone:  573-875-1991
                                        Facsimile:   573-875-1985
                                        Email: lear@learwerts.com
                                        Email: werts@learwerts.com

                                        *pro hac vice forthcoming*

                                        **ATTORNEYS FOR PLAINTIFFS**